**Slip Op. 05-90**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

| | |
|---|---|
| GLOBE METALLURGICAL, INC. and SIMCALA, INC.,       Plaintiffs,       v.       UNITED STATES,       Defendant,       and       BRATSK ALUMINIUM SMELTER and RUAL TRADE LIMITED,       Defendant-Intervenors. | Consol. Court No. 03-00202 |

[The United States Department of Commerce's <u>Final Remand Results</u> are remanded.]

<u>DLA Piper Rudnick Cary Gray US LLP</u>, (<u>William D. Kramer</u> and <u>Clifford E. Stevens, Jr.</u>), for Globe Metallurgical, Inc. and SIMCALA, Inc., plaintiffs.

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director; <u>Jeanne E. Davidson</u>, Deputy Director; Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Michael Panzera</u>); of counsel: <u>Jonathan J. Engler</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for the United States, defendant.

**OPINION AND ORDER**

**I.    Standard of Review**

The Court will uphold the United States Department of Commerce's ("Commerce") redetermination pursuant to the Court's

remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(I) (2000).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citations omitted).

## II.  Background

The relevant facts and procedural history in this case are set forth in the Court's remand opinion, Globe Metallurgical, Inc. v. United States, 28 CIT ___, 350 F. Supp. 2d 1148 (2004).  Commerce determined that market economy Russian values did not constitute "the best available information," and, therefore, such values were not used to calculate normal value ("NV").  See Notice of Final Determination of Sales at Less Than Fair Value for Silicon Metal From the Russian Federation ("Final Determination"), 68 Fed. Reg. 6,885 (Feb. 11, 2003), as amended by Notice of Amended Final Determination of Sales at Less Than Fair Value for Silicon Metal

From the Russian Federation ("<u>Amended Final Determination</u>") 68 Fed. Reg. 12,037 (Mar. 13, 2003). In its <u>Final Determination</u>, Commerce excluded the cost of recycled silicon metal fines as a factor of production of silicon metal produced by Bratsk Aluminium Smelter ("Bratsk"), Zao Kremny ("Kremny") and SUAL-Kremny-Ural Ltd. ("SKU"). <u>See</u> <u>Final Determination</u> 68 Fed. Reg. at 6,885. On September 24, 2004, the Court issued a remand order directing Commerce to: (1) use Russian market economy values or explain why such values are not "the best available information;" and, (2) explain why it excluded recycled silicon metal fines from its factor of production cost analysis. <u>See</u> <u>Globe</u>, 28 CIT at ___, 350 F. Supp. 2d at 1161. Subsequent to the Court's remand, Bratsk entered a notice of voluntary dismissal on December 1, 2004, and withdrew its challenge to Commerce's use of values other than Russian market economy values in calculating NV. <u>See</u> Stipulation of Dismissal. Accordingly, this issue is moot.

Commerce filed its final results of redetermination pursuant to court remand ("<u>Final Remand Results</u>") on December 23, 2004. Plaintiffs, Globe Metallurgical, Inc. and SIMCALA, Inc. (collectively, "Globe") filed comments to Commerce's <u>Final Remand Results</u> on January 25, 2005.[1] <u>See</u> Pls.' Comments Remand

---

[1] Bratsk and Rual Trade Limited did not file a response to Commerce's <u>Final Remand Results.</u>

Determination ("Globe's Comments"). Commerce filed its response to Globe's Comments on March 8, 2005. See Def.'s Resp. Pls.' Comments ("Commerce's Reply"). Globe filed rebuttal comments on March 25, 2005. See Reply Resp. Pls.' Comments Remand Redetermination ("Globe's Reply"). Globe agrees with all aspects of Commerce's determinations on remand except with respect to the antidumping duty margin calculated for Kremny.

### III. Commerce Reasonably Explained its Determination to Include and Value Recycled Silicon Metal Fines as a Factor of Production

In its Final Remand Results, Commerce determined that the usage of silicon metal fines sized zero to five millimeters were included in the production quantity provided by Bratsk and Kremny. See Final Remand Results at 3. Accordingly, Commerce determined that the usage of such fines in the production of the subject merchandise should have been valued and included in the calculation of NV. See id. Commerce, however, found that SKU had excluded silicon metal fines from its factors of production because it treated such fines as a byproduct. See id. at 11-12. In its Final Determination, Commerce did not adjust SKU's reported production figure. See Remand Results at 7-8. Commerce granted SKU a byproduct offset for the sale and reuse of silicon metal fines. See id. at 12. Accordingly, Commerce determined that, for SKU, the use of silicon metal fines to produce silicon metal should not be

included in the calculation of NV "because it represents the reuse of a byproduct and no costs have been allocated to SKU's silicon metal sized zero to five millimeters."  Id.

Commerce reviewed the record and determined that the composition, use, and value of quartzite fines and silicon metal fines were different and precluded the use of the former as a surrogate value for the latter.  See Final Remand Results at 8-9. Consequently, Commerce determined that Kremny and Bratsk's surrogate-valued cost of manufacture of silicon metal constituted "the best available information."  See id. at 9-10.  Accordingly, such values were used as surrogate values for Kremny and Bratsk's silicon metal fines sized zero to five millimeters.  See id. Based on the record evidence, Commerce found it appropriate to account for and value Kremny's consumption of silicon metal fines sized zero to five millimeters during its production of silicon metal. See id. at 10-11.  As a result, Commerce recalculated Kremny's antidumping duty margin. See id. at 11.

Commerce found that there was substantial record evidence indicating that Bratsk included the usage of recycled silicon metal fines in its production figure.  See id. at 12.  While there was record evidence "that Bratsk reuse[d] at least some silicon metal, there [was] no information on its usage amount of silicon metal sized zero to five millimeters in the production of silicon metal."

Id. at 13. Accordingly, Commerce used non-adverse facts available because Bratsk had been cooperative and acted to the best of its ability to provide information during the proceeding. See id. To value recycled silicon metal fines for Bratsk, Commerce assumed that the difference between the production and reported sales of silicon metal sized zero to five millimeters represented the amount of silicon metal fines reused by Bratsk. See id. at 14. Commerce calculated a per-unit rate by dividing the quantity of silicon metal reused by Bratsk's total production of silicon metal. See id. Commerce applied Bratsk's cost of manufacture to value its consumption of silicon metal fines sized zero to five millimeters and recalculated the antidumping duty margin accordingly. See id.

Commerce recalculated the antidumping duty margins for Kremny and Bratsk to 56.20 percent and 87.08 percent, respectively. See Final Remand Results at 15. All parties agree with Commerce's determination to capture the cost of recycled fines in NV and with Commerce's recalculated antidumping margin for Bratsk.[2] See Globe's Comments at 2. The Court finds that Commerce reasonably explained why each producer's surrogate-valued cost of manufacture was the "best available information". See Universal Camera, 340 U.S. at 477. Commerce also reasonably explained why recycled

---

[2] No party contested the reporting of SKU's production quantity, therefore Commerce made no adjustments to SKU's reported production figure. See Final Remand Results at 7-8.

silicon metal fines sized zero to five millimeters should be included in its calculation of NV. Moreover, Commerce's determination is supported by substantial record evidence and in accordance with law. Therefore, the Court affirms Commerce's determination to include recycled silicon metal fines as a factor of production and its determination to use each producer's surrogate-valued cost of manufacture as the best available information. Furthermore, the Court affirms Commerce's recalculated antidumping duty margin for Bratsk.

## IV. Commerce's Calculation of Kremny's Antidumping Duty Margin

### A.   Background

In its Preliminary Determination, Commerce used adverse facts available to determine the antidumping duty margin for Kremny's United States sales made through its affiliated United States company. See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination for Silicon Metal From the Russian Federation ("Preliminary Determination"), 67 Fed. Reg. 59,253, 59,260 (September 20, 2002). In determining Kremny's antidumping duty margin, Commerce based a percentage of Kremny's dumping margin on Bratsk's rate. See id. In its Final Determination and Amended Final Determination, Commerce used Bratsk's dumping margin of 77.51 percent and 79.42, respectively, as adverse facts available and weight averaged these rates with the

margin calculated for the remaining Kremny sales.  See <u>Final Determination</u>, 68 Fed. Reg. at 6,888; <u>Amended Final Determination</u>, 68 Fed. Reg. at 12,039.  For the <u>Final Remand Results</u>, Commerce recalculated the antidumping duty margin for Kremny using the 79.42 percent rate found for Bratsk in the <u>Amended Final Determination</u>. See <u>Final Remand Results</u>.

### B.    Contentions of the Parties

#### 1.    Globe's Contentions

Globe contends that in calculating Kremny's antidumping duty rate, Commerce should have used the corrected 87.08 percent margin found for Bratsk in the <u>Final Remand Results</u>.  See Globe's Comments.  Globe asserts that Commerce correctly used the margin calculated for Bratsk as adverse facts available and weight-averaged this rate with the margin calculated for the remaining Kremny sales.  See <u>id.</u> at 4-5.  Globe, however, argues that Commerce erroneously "used the invalidated 79.42 percent rate found for Bratsk in the <u>Amended Final Determination</u>" as adverse facts available.  <u>Id.</u> at 5.  Commerce offered no explanation for its failure to use the corrected rate for Bratsk.  See <u>id.</u>  Moreover, the antidumping duty margin for Kremny is inaccurate because it does not completely capture the cost of recycled fines.  See <u>id.</u> at 7.  Globe also argues that Commerce did not provide notice of its determination to use the Bratsk rate calculated for the <u>Amended</u>

<u>Final Determination</u>. <u>See</u> Globe's Reply at 5. Commerce corrected the antidumping margin for Bratsk in the <u>Final Remand Results</u>, which substantially increased the antidumping duty margin from the two prior determinations. <u>See</u> <u>id.</u> It did not become clear, however, that Commerce had improperly selected the lower, previously "invalidated" rate as adverse facts available for Kremny until after the <u>Final Remand Results</u> had been published. <u>See</u> <u>id.</u> at 4-6.

### 2. Commerce's Contentions

Commerce argues that Globe failed to raise the issue of Commerce's reliance upon the 79.42 antidumping duty margin for Bratsk prior to the publication of the <u>Final Remand Results</u>. <u>See</u> Commerce's Reply at 7. Commerce maintains that Globe "had the opportunity and sufficient time in which to raise arguments concerning the relevance of Bratsk's new [adverse facts available] margin for Kremny's rate, but Globe failed to take advantage of that opportunity." <u>Id.</u> Commerce contends that its draft remand results put Globe on notice that it did not intend to update Kremny's margin to reflect the new Bratsk rate. <u>See</u> <u>id.</u> Accordingly, Commerce asserts that Globe failed to exhaust its administrative remedies and that it now "seeks to circumvent the administrative proceedings and preclude Commerce from addressing the issue in the first instance to adjust its remand determination

accordingly, if appropriate . . . ." Id. at 8. Commerce, therefore, argues that the Court should reject Globe's arguments and sustain the Final Remand Results. See id. at 9.

Commerce alternatively asserts that a remand may be necessary because it did not explain why the recalculated Bratsk antidumping duty margin of 87.08 percent was not used in applying adverse facts available for United States sales by Kremny. See id. Accordingly, Commerce requests the Court to remand this case for Commerce to provide an explanation for its determination, and, if warranted, recalculate the antidumping margin for Kremny. See id.

### C. Analysis

The Court agrees with Globe and finds that Commerce's use of the Bratsk antidumping duty rate calculated for the Amended Final Determination to calculate Kremny's antidumping duty margin for the Final Remand Results is not in accordance with law. The Court finds that Commerce did not use an "invalidated" rate as argued by Globe. See Globe's Comments at 5. Rather, Commerce used a previously abandoned rate in lieu of a subsequently corrected rate in its calculation of Kremny's antidumping duty rate. Nevertheless, "[w]hile an abandoned rate is not quite the same as a rate invalidated by a court . . . it is very close." Pulton Chain Co., Inc. v. United States, 21 CIT 1290, 1293 (1997). Commerce adjusted and redetermined the antidumping duty margin for Kremny

and Bratsk to 56.20 percent and 87.08 percent, respectively.  See Final Remand Results at 15.  Although Commerce calculated an 87.08 percent rate for Bratsk, Commerce based a percentage of Kremny's sales made to the United States on the previously abandoned rate of 79.42 percent, found in its earlier Amended Final Determination. See Final Remand Results.  Commerce, however, has failed to provide any explanation for its departure and use of a previously abandoned rate. and why it did not use Bratsk's recalculated antidumping duty margin in the Final Remand Results.

Commerce argues that the doctrine of exhaustion precludes judicial review of Commerce's use of the lower rate found for Bratsk in the Amended Final Determination.  See Commerce's Resp. at 6-7.  Generally, the exhaustion doctrine requires a party to present its claims to the relevant administrative agency for the agency's consideration before raising these claims to the Court. See Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.")  Congress, however, has granted the Court with discretion to determine when it is appropriate to require the exhaustion doctrine.  See China Steel Corp. v. United States, 28

CIT \_\_\_, \_\_\_, 306 F. Supp. 2d 1291, 1310 (2004). The court has recognized certain exceptions to the application of the exhaustion doctrine. One such applicable exception arises when the respondent is not given the opportunity to raise its objections at the administrative level because Commerce did not address the issue until the final determination. See Philipp Bros., Inc. v. United States, 10 CIT 76, 83-84, 630 F. Supp. 1317, 1324 (1986); see also Hebei Metals & Minerals Imp. & Exp. Corp. v. United States, 2004 Ct. Intl. Trade LEXIS 89. Although Commerce enjoys broad latitude in choosing the information it relies on, its discretion is not unlimited. See Shandong Huarong Gen. Corp. v. United States, 25 CIT 834, 838, 159 F. Supp. 2d 714, 719 (2001). Commerce must exercise its discretion "in a manner consistent with the underlying objective of 19 U.S.C. § 1677b(c)—to obtain the most accurate dumping margins possible." Id.

In the case at bar, Globe never challenged Commerce's determination to use the lower Bratsk rate calculated in its earlier determination. It only became apparent, however, that Commerce would use the lower Brastk rate when the Final Remand Results were released. Globe commented on several errors made by Commerce in its draft remand determination. See Globe's Reply at 4-6. It was only in the Final Remand Results, however, that Commerce corrected these errors, which significantly increased the

antidumping duty margin for Bratsk from 79.42 percent to 87.08 percent.  See Final Remand Results at 15.  The Court finds that the exhaustion doctrine is inapplicable because Globe did not have the opportunity to contest the use of the lower rate or the recalculation of Kremny's antidumping duty margin until after the Final Remand Results were published.  Cf. Philipp Bros., 10 CIT at 83-84, 630 F. Supp. at 1324.  To hold otherwise would be "overly technical and unfair" to Globe.  Hebei Metals, 2004 Ct. Intl. Trade LEXIS 89, at *29.

Consequently, the Court rejects Commerce's exhaustion argument and declines to defer to Commerce's methodology because its determination is not supported by substantial evidence or in accordance with law.

## CONCLUSION AND ORDER

The Court concludes that Commerce reasonably determined to include the cost of recycled silicon metal fines sized zero to five millimeters in the calculation of NV for Bratsk and Kremny. Moreover, the Court finds that Commerce's calculation of Bratsk's antidumping duty margin is supported by substantial evidence and in accordance with law.  Commerce, however, failed to provide a reasonable explanation for its use of an abandoned antidumping duty margin, rather than the recalculated margin, in its calculation of

Kremny's antidumping duty margin. Commerce's determination to use the 79.42 percent antidumping duty rate for Bratsk calculated in its Amended Final Results is not supported by substantial evidence. Accordingly, the Court remands this case to Commerce to recalculate the antidumping duty margin for Kremny or explain why it used the abandoned margin for Bratsk to calculate Kremny's antidumping duty margin for the Final Remand Results. For the foregoing reasons, it is hereby

**ORDERED** that Commerce's determination to include recycled silicon metal fines sized zero to five millimeters in its factors of production cost analysis is affirmed; it is further

**ORDERED** that Commerce's calculation of Bratsk's antidumping duty margin is affirmed; it is further

**ORDERED** that this case is remanded to Commerce with instructions to: (a) recalculate Kremny's antidumping duty margin using the antidumping duty margin for Bratsk calculated in the Final Remand Results or explain the use of the Bratsk margin from the Amended Final Determination; and its is further

**ORDERED** that Commerce shall have ninety (90) days, until October 27, 2005, to complete and file its remand determination;

plaintiffs shall have thirty (30) days from that filing to file comments, and Commerce and defendant-intervenors shall have twenty (20) days after plaintiffs' comments are filed to file any reply.


                                        /s/ Nicholas Tsoucalas
                                        NICHOLAS TSOUCALAS
                                           SENIOR JUDGE

Dated:    July 27, 2005
          New York, New York