NATION FORD CHEM. CO., Plaintiff,

v.

UNITED STATES, Defendant,

Yude Chem. Co., Zhenxing Chem. Indus. Co., & Pht Int'l, Inc., Defendant–Intervenors.

Slip Op. 97–171.
Court No. 96–11–02502.

United States Court of International Trade.

Dec. 12, 1997.

King & Spalding (Stephen A. Jones; Martin M. McNerney with him on the brief), Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Reginald T. Blades, Jr.), and Linda S. Chang, International Office of Chief Counsel for Import Administration, of counsel, Washington, DC, for defendant.

Williams Mullen Christian & Dobbins (William E. Perry), Washington, DC, for defendant-intervenors.

## MEMORANDUM OPINION

DiCARLO, Senior Judge.

Plaintiff Nation Ford, the sole domestic producer of sulfanilic acid, challenges the final results of the antidumping administrative review found in *Sulfanilic Acid from the People's Republic of China*, 61 Fed.Reg. 53,711 (Dep't Commerce 1996) (final admin. review) [hereinafter *Final Determination*]. The review covered the period from August 31, 1993 to July 1, 1994. The court has jurisdiction under 28 U.S.C. § 1581(c) (1994). Nation Ford claims that Commerce undervalued the cost to Chinese producers of aniline, the primary raw material used in the manufacture of sulfanilic acid. It argues that Commerce would have found a greater margin of dumping had it correctly calculated the foreign market value of sulfanilic acid in the People's Republic of China (PRC). For the reasons given below, Commerce's final results are sustained.

## BACKGROUND

Commerce calculates an antidumping margin by comparing an imported product's price in the United States to the foreign market value (FMV) of comparable merchandise. FMV typically equals the domestic price of the product in the exporting country. When a nonmarket economy (NME) country such as the PRC is involved, however, domestic product sales are usually not reliable indicators of market value. In most such cases, Commerce must estimate the FMV by 1) isolating each factor of the production process in the NME country, 2) choosing a surrogate market economy country at a comparable level of economic development that produces comparable merchandise, 3) assigning a value to each factor of production equal to its cost in the surrogate country, and 4) adding to those values an estimated amount for profit and general expenses. 19 U.S.C. § 1677b(c) (1988) (pre–Uruguay Round law applies to this administrative review). The purpose of the procedure is to construct the product's price as it would have been if the NME country had been a market economy, using the best information available regarding surrogate values. *Tianjin Machinery Import & Export Corp. v. United States*, 16 CIT 931, 940, 806 F.Supp. 1008, 1018 (1992); *see Timken Co. v. United States*, 16 CIT 142, 144, 788 F.Supp. 1216, 1218 (1992).

Commerce used the above procedure in this administrative review, using India as the

surrogate market economy country. In order to construct a surrogate market cost for sulfanilic acid, it was necessary to assign a value to aniline, a key raw material and thus a major factor of production. Aniline is subject to a two-tier price structure in India. Indian aniline producers are protected by high import tariffs, and their product is accordingly more expensive than the imported aniline available from other countries. Indian manufacturers must pay an eighty-five percent duty on imported aniline used to manufacture domestic products, but may import aniline duty free when it is used to produce exports. (Resp'ts' Additional PAPI Submission of June 28, 1995, Pub. Doc. 114.) There is, however, no material difference in quality or kind between domestic and imported aniline. As a result, Indian manufacturers tend to use domestically-produced aniline for domestic products and imported aniline for exports. *Final Determination* at 53,715. PRC manufacturers use aniline produced in the PRC for both domestic and exported products. (Resp'ts' Resp. Dep't Questionnaire of Feb. 3, 1995, Pub. Doc. 50 app. D at 5 (Yude); *id.* app. E at 5 (Zhenxing).) Defendant states that aniline is not subject to tariffs in the PRC. (Def.'s Br. at 45.)

During the administrative proceedings, the parties disagreed as to whether Commerce should use the domestic or import price of aniline in India as a surrogate value for the aniline used in the PRC. Plaintiff urged Commerce to use the domestic price, while the PRC respondents argued that the import price was more representative. Commerce decided to use import prices obtained from the *Monthly Statistics of the Foreign Trade of India Volume Two—Imports (Indian Import Statistics)*, as it had done in its original investigation. *Final Determination* at 53,-714–15.

Plaintiffs argue again before this court that Commerce should have used domestic rather than import prices because 1) PRC manufacturers use domestically produced aniline, and 2) Indian import prices are subsidized, aberrational, and not market-based. In the alternative, they argue that if Commerce does use import statistics to value aniline, it should add two items to the basic Indian import price: 1) the 85% import duty, and 2) an importer mark-up, on the assumption that independent companies import the aniline and then resell it to manufacturers of sulfanilic acid.

## DISCUSSION

■ Once Commerce has made a final determination, the court will uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). The law requires Commerce to estimate as accurately as possible what the market price of aniline would have been in the PRC "if such prices ... were determined by market forces." *Tianjin Machinery*, 806 F.Supp. at 1018. Commerce decided that Indian import prices, without added duties or mark-ups, were the best estimate of aniline costs in a theoretical market-economy PRC. *Final Determination* at 53,715. Plaintiff argues that Commerce's decision is not entitled to deference because it is unsupported by substantial evidence and not in accordance with the antidumping statute and its legislative history. Plaintiff also claims Commerce's finding that Indian importers did not pay duties or importer mark-ups is not supported by substantial evidence.

### I.

■ The court finds that there is substantial evidence to support Commerce's decision to choose import prices over domestic prices. The record contains evidence of protective tariffs, which distort Indian domestic aniline prices. (Resp'ts' Additional PAPI Submission of June 28, 1995, Pub. Doc. 114 (showing eighty-five percent tariff).) Congress has directed Commerce to avoid surrogate values tainted by nonmarket forces. *See* H.R. Conf. Rep. No. 100–576, at 590–92 (1988). A protective import tariff is a classic example of a

nonmarket force. Commerce's rejection of domestic aniline prices as a surrogate value simply followed Congress' directive to avoid such distortions.

After finding that domestic prices were not an appropriate surrogate value, Commerce reasonably decided to use import prices as an alternative. The court has held that import prices in the surrogate market may be used to set the value of a factor of production. *Tehnoimportexport, UCF America Inc. v. United States,* 16 CIT 13, 16, 783 F.Supp. 1401, 1405 (1992). Commerce had ample detail available concerning the price of aniline imported to India. (*See, e.g.,* Resp'ts' Comments Regarding Appropriate Surrogate Value for Aniline of Aug. 11, 1995, Pub. Doc. 136 app. 1.) Its use of import prices was thus based on substantial evidence in the record, and the court will uphold its results.

■ Commerce's refusal to add import duties and importer mark-ups to those prices is also supported by substantial evidence. Commerce found that the evidence in the record did not justify making such adjustments. Respondents produced evidence that Indian producers did not pay import duties on aniline used to manufacture exports. *Id.;* (Resp'ts' Additional PAPI Submission of June 28, 1995, Pub. Doc. 114.) Plaintiffs produced no evidence to the contrary. As for importer markups, Commerce found that "[t]here is no evidence on the record of the review indicating who imports the aniline, the sulfanilic acid producer or an importer. . . . Accordingly, there is no basis for determining that an importer's markup would be included in the price to the Indian sulfanilic acid producer[.]" *Final Determination* at 53,716.

■ Given the absence of proof that Indian producers paid import duties or markups on imported aniline, Commerce's refusal to add those adjustments was supported by the record. Commerce made a reasonable decision based on the evidence available to it. It had no duty to seek out additional information not submitted by the parties. The burden of creating an adequate record lies with the party challenging Commerce's determination, not with Commerce. *Tianjin Mach. Import & Export Corp. v. United States,* 16

CIT 931, 936–37, 806 F.Supp. 1008, 1015 (1992). In fact, even if the record had shown that Indian importers paid duties or markups, Commerce would not have had to add them to the surrogate value for aniline if it decided that the result was not representative of what the price of aniline would have been in a theoretical market-economy PRC.

## II.

■ As Commerce's decision to use unadjusted Indian import prices was supported by substantial evidence, it is entitled to deference unless plaintiff can show that it was not in accordance with law. Plaintiff raises several arguments suggesting that there is a conflict between Commerce's decision and the antidumping statute. In each case, unless the statute unambiguously speaks to the issue, "the question for the court is whether the agency's [decision] is based on a permissible construction of the statute." *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). If so, then the court will uphold Commerce's decision.

## A.

Plaintiff first argues that the factor of production at stake is "domestic aniline," rather than simply "aniline." The court cannot require Commerce to adopt that definition. Congress has stated that

the factors of production utilized in producing merchandise include, but are not limited to—

(A) hours of labor required,

(B) quantities of raw materials employed,

(C) amounts of energy and other utilities consumed, and

(D) representative capital cost, including depreciation.

19 U.S.C. § 1677b(c)(3) (1988). The statute provides no other instructions for defining factors of production. "The Act simply does not say—anywhere—that the factors of production must be ascertained in a single fashion." *Lasko Metal Products, Inc. v. United States,* 43 F.3d 1442, 1446 (Fed.Cir.1994).

Nothing in the phrase "raw materials employed" obligates Commerce to consider only raw materials produced by certain manufacturers. Rather, Congress has expressly stated that Commerce is "not limited to" factors of production as described in the statute. 19 U.S.C. § 1677b(c)(3). There is thus no basis for finding that Commerce's definition of "aniline" was unreasonable.

### B.

Next, plaintiff argues that Commerce's valuation of aniline must "reflect the actual experience" of producers in the PRC, claiming that if PRC producers do not use imported aniline, then Commerce may not use import prices as a surrogate value when domestic figures are available. (Pl.'s Reply at 1–2 (citing S.Rep. No. 100–71, at 107 (1987); *id.* at 6).) Again, nothing in the statute expressly prohibits Commerce from doing so. *See* 19 U.S.C. § 1677b(c). Commerce rejected the use of Indian domestic prices because it found that they were distorted by forces peculiar to India. Given the evidence in the record of the impact of India's eighty-five percent tariff on domestic aniline prices, it was reasonable to conclude that those prices were not adequately representative of the situation in the PRC. The portion of the legislative history on which plaintiff relies does not compel a different result, particularly since it discussed a version of the statute that was eventually rejected. S.Rep. No. 100–71, at 106–07 (1987) (factors of production methodology "reflects the actual production efficiencies and experience of the nonmarket economy producer").

■ Of course, a surrogate value must be as representative of the situation in the NME country as is feasible if it is to further "the basic purpose of the statute—determining current margins as accurately as possible." *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed.Cir.1990). That does not mean, however, that Commerce must duplicate the exact production experience of the PRC manufacturers at the expense of choosing a surrogate value that most accurately represents the fair market value of aniline in a market-economy PRC.

### C.

In a similar vein, plaintiff correctly notes that to the extent possible, Commerce must use surrogate values taken from "market economy countries that are . . . at a level of economic development comparable to that of the nonmarket economy country[.]" 19 U.S.C. § 1677b(c)(4). Plaintiff argues that because India imported its aniline from Japan, South Korea, the Netherlands, the United Kingdom, and the United States, Indian import prices are derived from economies that are not at a similar level of development to the PRC. (Pl.'s Reply at 5.) The court has addressed this issue in *Tehnoimportexport.* It held that however developed the economies of source countries might be, "[n]evertheless, the import prices selected by Commerce represent the price . . . available to domestic producers [in the surrogate country]." *Tehnoimportexport, UCF America Inc. v. United States,* 16 CIT 13, 18, 783 F.Supp. 1401, 1407 (1992). The Indian import prices used represented the price available to Indian producers. Plaintiff does not dispute that India and the PRC are at comparable levels of economic development. (*See, e.g.,* Pl.'s Reply at 7.) Hence, it is clear that the prices used were not taken from a more developed economy, and that Commerce did not violate 19 U.S.C. § 1677b(c)(4) by selecting them as a surrogate value. *Tehnoimportexport,* 16 CIT at 18, 783 F.Supp. at 1407.

### D.

Finally, plaintiff claims that Indian import prices are not valid surrogate values because they are subsidized by India's Advance License Program. This program allows producers to import raw materials duty free when used to produce exports. *Sulfanilic Acid from India,* 57 Fed.Reg. 35,784, 35,784 (Dep't Commerce 1992) (prelim. determination). Congress has directed that "[i]n valuing [factors of production], Commerce shall avoid using any prices which it has reason to believe or suspect may be dumped or subsidized prices." H.R. Conf. Rep. No. 100–576, at 590 (1988). In a 1992 investigation, Commerce found that Indian advance licenses for aniline were countervailable subsidies when

the aniline was used to manufacture sulfanilic acid. *Sulfanilic Acid from India,* 57 Fed. Reg. at 35,784–85. Plaintiff claims that the Advance License Program subsidizes imported aniline, and that therefore the import price may not be used as a surrogate value.

Plaintiff's argument fails for two reasons. First, it is not necessary to determine whether the Advance License Program qualifies as a subsidy here, because the answer does not affect the outcome of the case. For the purposes of this case it does not matter whether the program has subsidized Indian producers, because Commerce is not relying on the export price of Indian sulfanilic acid to construct a FMV in the PRC. Even if the program were a subsidy, any benefit conferred would be on Indian sulfanilic acid, not on aniline. While the program may have reduced the end export price of Indian sulfanilic acid, it did not affect the basic value of the imported aniline. The question here is not whether Indian sulfanilic acid is sold at market prices. The only consideration is whether import prices were a better estimate of the price of aniline in a theoretical market-economy PRC than were domestic prices. Commerce's factual findings in *Sulfanilic Acid from India,* therefore, do not render its findings in this case unreasonable.

Second, it is not a foregone conclusion that the Advance License Program is always a subsidy. It is true that Commerce previously found that the program conferred a countervailable benefit on Indian sulfanilic acid producers. *Id.* at 35,784; *Sulfanilic Acid from India,* 58 Fed.Reg. 3,259, 3,260 (Dep't Commerce 1993) (final determination). Nevertheless, subsidy findings are fact-specific, and circumstances often change. Commerce may conclude that a program conferred different levels of benefit during different administrative reviews, even among reviews of the same countervailing duty order. In some reviews, it may conclude that the program conferred no countervailable benefit at all. For that reason, factual findings in past determinations, while often relevant, are not binding in subsequent cases. *See Inland Steel Indus., Inc. v. United States,* 21 CIT ——, ——, 967 F.Supp. 1338, 1361 (1997). Had it considered it in this review, it is

possible that Commerce might have concluded that in this case the Advance License Program did not act as a subsidy at all.

## CONCLUSION

The court finds Commerce's decision to use Indian import prices as a surrogate value for aniline in the PRC to be supported by substantial evidence and in accordance with law. Therefore, plaintiff's motion for judgment upon the agency record is denied.

## JUDGMENT ORDER

Upon consideration of all papers and proceedings in this case, and after due deliberation, it is hereby

ORDERED that plaintiff's motion for judgment upon the agency record is denied, and it is further

ORDERED that the final results of the 1993–94 administrative review in *Sulfanilic Acid from the People's Republic of China,* 61 Fed.Reg. 53,711 (Dep't Commerce 1996), are sustained.

SO ORDERED.