**Slip Op. 01-117**

**United States Court of International Trade**

<table>
<tr><td>

BAODING YUDE CHEMICAL INDUSTRY CO., LTD.; BAODING ZHENXING CHEMICAL CO., LTD.; P.H.T. INTERNATIONAL, INC.

       Plaintiffs,

       v.

UNITED STATES,

       Defendant,

       and

NATION FORD CHEMICAL CO.,

       Defendant-Intervenor.

</td><td>

Before: Pogue, Judge

Court No.: 00-04-00162

**Public Version**

</td></tr>
</table>

[Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record denied.]

Decided: September 26, 2001

Garvey, Schubert & Barer (William E. Perry, John C. Kalitka) for Plaintiffs.

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Janene M. Marasciullo, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Edna Boyle-Lewicki, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Pepper Hamilton LLP, (Gregory C. Dorris, Benjamin M. Kahrl), for Defendant-Intervenor.

**OPINION**

**Pogue, Judge**: This action is before the Court on Plaintiffs' motion for judgment on the agency record pursuant to USCIT Rule 56.2. Plaintiffs, Baoding Yude Chemical Industry Co., Ltd., Baoding Zhenxing Chemical Co., Ltd., and P.H.T. International., Inc. (collectively "Plaintiffs"), contest the final results of the administrative review for the period August 1, 1997 through July 31, 1998 by the International Trade Administration of the U.S. Department of Commerce ("Commerce" or the "Department") of the antidumping order covering sulfanilic acid imported from the People's Republic of China ("PRC"). See Sulfanilic Acid from the People's Republic of China, 65 Fed. Reg. 13,366 (Dep't Commerce March 13, 2000) (final results)("Final Results"). Specifically, Plaintiffs challenge Commerce's decision to use the Indian domestic price of aniline, rather than the price of aniline imported into India, as a surrogate value in determining the cost of production of sulfanilic acid exported from the PRC.

Sulfanilic acid is "a chemical intermediate used world wide to make whitening agents for paper, yellow food colors, concrete additives and speciality dyes." Letter From ECS to Sec. of Commerce, Petitioner's Factual Info., P.R. Doc. No. 950 at Ex. 1 (Aff. of John Dickson at 1), Def.'s Public App. at Ex. C (Jan. 20, 1999)("Petitioner's Factual Info."). Aniline is the principal raw material used in the production of sulfanilic acid. See Pl.'s Mem.

Supp. Mot. J. Agency R. at 2.  The court has jurisdiction pursuant to 28 U.S.C. § 1581(c)(1994).


## Background

Commerce calculates an antidumping duty margin by comparing an imported product's price in the United States to the normal value ("NV") of comparable merchandise.  19 U.S.C. §1677b(a)(1994).  NV typically is based upon the domestic price of the product in the exporting country.  19 U.S.C. § 1677b(a)(1)(B).  When the exporting country is a nonmarket economy ("NME") country,[1] however, under certain circumstances Commerce must apply section 1677b(c) to determine the NV.  This provision reads as follows:

> (1) In general. If--
>
>    (A)  the subject merchandise is exported from a nonmarket economy country, and
>
>    (B)  [Commerce]  finds  that  available information does not permit the normal value of the subject merchandise to be determined under subsection (a) of this section,[Commerce] shall determine the normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise . . . . The valuation of the factors of production shall be based on the best available information regarding

---

[1]The term "nonmarket economy country" is defined by statute as "any foreign country that the administering authority determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C. §1677(18)(A).

> the values of such factors in a market
> economy country or countries considered
> to be appropriate by [Commerce].

19 U.S.C. §1677b(c).  In valuing the factors of production, the statute nonexclusively instructs Commerce to determine the cost of labor, raw materials, utilities and capital costs.  19 U.S.C. §1677b(c)(3).  The purpose of section 1677b(c) is to construct the product's NV as it would have been if the NME country were a market economy country, using the best available information regarding surrogate values for the factors of production in a market economy country.  See Air Products & Chemicals, Inc. v. United States, 22 CIT 433, 435, 14 F. Supp. 2d 737, 741 (1998)(citing Timken Co. v. United States, 16 CIT 142, 144, 788 F. Supp. 1216, 1218 (1992); Tianjin Mach. Import & Export Corp. v. United States, 16 CIT 931, 940, 806 F. Supp. 1008, 1018 (1992));[2] see also Nation Ford Chem. Co. v. United States, 166 F.3d 1373, 1375 (1999)[3]("Commerce's task [is] to assess the 'price or costs' of factors of production of sulfanilic acid in India in an attempt to construct a hypothetical

---

[2]These cases, regarding Commerce's NME methodology, were decided under the pre-Uruguay Round version of the antidumping statute.  However, this aspect of the statute was not changed by the Uruguay Round amendments.  Compare 19 U.S.C. §1677b(c)(1988) with 19 U.S.C. §1677b(c)(1994).

[3]We refer frequently to three cases entitled Nation Ford Chemical Co. v. United States.  These references will be abbreviated in chronological order.  See Nation Ford Chem. Co. v. United States, 21 CIT 1371, 985 F. Supp. 138 (1997)("Nation Ford I"), aff'd, 166 F.3d 1373 (1999); Nation Ford Chem. Co. v. United States, 21 CIT 1378, 985 F. Supp. 138 (1997)("Nation Ford II"); Nation Ford Chem. Co. v. United States, 166 F.3d 1373 (1999)("Nation Ford III").

market value of that product in China.").

    Pursuant to section 1677b(c), Commerce found the PRC to be a NME country[4] and chose India as the surrogate market economy country.[5]   To construct a surrogate NV for sulfanilic acid, Commerce assigned a value to aniline, a major factor of production. See Final Results at 13,367; Pl.'s Mem. Supp. Mot. J. Agency R. at 2 ("Aniline is the principal raw material of six inputs used in the production of sulfanilic acid, constituting approximately 90 percent of the total unit cost.").   While there is no material difference in quality or kind between domestic and imported aniline, see Nation Ford I, 21 CIT at 1372, 985 F. Supp. at 135, historically, Indian aniline producers have been protected by high import tariffs.   See Issues and Decision Memo for the Administrative Review of Sulfanilic Acid from the People's Republic of China (PRC) from August 1, 1997 through July 31, 1998, P.R. Doc. No. 1057 at 7, Pl.'s App. at Ex. 6 (Mar. 6, 2000) ("Decision

_____

    [4]"In every case conducted by the Department involving the PRC, the PRC has been treated as a nonmarket economy." Sulfanilic Acid From the People's Republic of China , 64 Fed. Reg. 48,788, 48,791 (Dep't Commerce Sept. 8, 1999)(prelim. results)("Preliminary Results").

    [5]Finding India to be at a level of economic development comparable to the PRC and a significant producer of sulfanilic acid, Commerce selected India as the surrogate market economy country in accordance with 19 U.S.C. §1677b(c)(4).   See Preliminary Results at 48,791.   No party challenges the use of India as the surrogate market economy.   See Pl.'s Mem. Supp. Mot. J. Agency R. at 3; Memo from Analyst/IA to File, Selection of Significant Producer Info., P.R. Doc. No. 990 at 1, Def.'s Pub. App. at Ex. E (August 31, 1999)("Selection of Significant Producer").

Memo"). Accordingly, in the original antidumping investigation as well as the following four administrative reviews, Commerce calculated the surrogate NV using the imported price of aniline.[6] See Sulfanilic Acid From the People's Republic of China, 57 Fed. Reg. 29,705 (Dep't Commerce July 6, 1992)(final determ.); Sulfanilic Acid From the People's Republic of China, 61 Fed. Reg. 53,711 (Dep't Commerce Oct. 15, 1996)(final results); Sulfanilic Acid From the People's Republic of China, 61 Fed. Reg. 53,702 (Dep't Commerce Oct. 15, 1996)(final results and partial recission); Sulfanilic Acid From the People's Republic of China, 62 Fed. Reg. 48,597 (Dep't Commerce Sept. 16, 1997)(final results); Sulfanilic Acid From the People's Republic of China, 63 Fed. Reg. 63,834 (Dep't Commerce Nov. 17, 1998)(final results).

However, for the period of review at issue, August 1, 1997 to July 31, 1998, Commerce departed from its prior practice and calculated the surrogate NV using the domestic price of aniline. See Decision Memo at 9.   The sole issue before the Court is Plaintiffs' challenge to this decision.

_____

[6]Nation Ford Company, the sole domestic producer of sulfanilic acid, challenged the final results of the administrative reviews covering August 1, 1993 to July 31, 1994 and August 1, 1994 to July 31, 1995.  See Nation Ford I, 21 CIT 1371, 985 F. Supp. 133; Nation Ford II, 21 CIT 1378, 985 F. Supp. 138.  This Court sustained Commerce's final decisions in both cases.  See Nation Ford I, 21 CIT 1371, 985 F. Supp. 133; Nation Ford II, 21 CIT 1378, 985 F. Supp. 138. The Court of Appeals for the Federal Circuit ("CAFC") affirmed this Court's decision for the administrative review covering August 1, 1993 to June 31, 1995.  See Nation Ford III, 166 F.3d 1373.

**Standard of Review**

The Court must uphold a final determination by Commerce in an antidumping investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(1994).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966). Thus, the Court's function is not to reweigh the evidence but rather to ascertain whether Commerce's determination is supported by substantial evidence on the record. Matushita Elec. Indus. Corp. v. United States, 750 F.2d 927, 936 (1984).

**Discussion**

Plaintiffs make two claims. First, Plaintiffs argue that Commerce's determination is contrary to law in that the agency failed to adequately justify its departure from prior practice. See Pl.'s Mem. Supp. Mot. J. Agency R. at 20. Second, Plaintiffs maintain that Commerce's conclusion that the domestic price

constitutes the best available information in this circumstance is unsupported by substantial evidence on the record.  See id. at 21-30.  For the reasons discussed below, the Court rejects both claims and sustains Commerce's decision to use the domestic price of aniline as a factor of production.

**I.    Commerce Adequately Justified Its Departure From Prior Practice**

Plaintiffs, in their briefs, outline the original antidumping investigation concerning sulfanilic acid from the PRC and the four subsequent administrative reviews.  See id. at 7-16.  As Plaintiffs correctly note, "in almost ten years of initial investigations and administrative review investigations of sulfanilic acid from the PRC, as well as the preliminary determination in this review, the Department used the data for the lower priced imported aniline . . . ."  Id. at 3 (internal citations omitted).  Plaintiffs argue that this departure from previous practice is an abuse of discretion.[7]  See id. at 20.

More specifically, Plaintiffs argue that Commerce failed to comply with Allegheny Ludlum Corporation v. United States', 24 CIT

_____

[7]Plaintiffs point out that the preliminary results of the administrative review at issue, which used the import price of aniline in its calculations, followed Commerce's prior practice. See Pl.'s Mem. Supp. Mot. J. Agency R. at 3.  Commerce, however, is not obligated to calculate the values of factors of production as they were calculated by Commerce during the preliminary investigation.  See Coalition for the Preservation of Am. Brake Drum and Rotor Aftermarket Mfrs. v. United States, 23 CIT __, __, 44 F. Supp. 2d 229, 259 (1999)("Coalition").

__, __, 112 F. Supp. 2d 1141, 1147 (2000), ruling that "an agency must either conform its actions to its prior decisions or explain the reasons for its departure." See Pl.'s Mem. Supp. Mot. J. Agency R. at 20. We agree that the principle stated in Allegheny is controlling. The Decision Memo, adopted by Commerce in the Final Results, however, clearly refutes Plaintiffs' allegation that Commerce failed to articulate its reasons for departing from prior practice.

In the Decision Memo, Commerce reviewed the parties' arguments concerning the appropriate selection of a surrogate value. See Decision Memo at 7-9 (summarizing in length the parties' arguments). Commerce outlines four specific and independent grounds upon which it based its decision to use the domestic price of aniline. See id. at 9. First, Commerce concluded that the reduction in the high Indian tariff rate effectively removed the previous distortions in the domestic price. See id. Second, Commerce concluded that the increased exports of aniline products from India suggested that Indian manufacturers and exporters no longer depended on imported aniline. See id. Third, Commerce further concluded from the decrease in domestic price "to a level comparable to the published export price," that during the period of review Indian manufacturers and exporters used domestically produced aniline. Id. Finally, Commerce noted that the record contains information from which the domestic price of aniline could

be adjusted accurately for excise and local taxes.[8]  See id.

Commerce's articulation of these four independent grounds for its departure from prior practice satisfies the principle set forth in Allegheny.  Therefore, we reject Plaintiffs' contention and hold that Commerce acted in accordance with law.  Allegheny provides Commerce with some flexibility, recognizing that "'[e]xperience is often the best teacher, and agencies retain a substantial measure of freedom to refine, reformulate, and even reverse their precedents in the light of new insights and changed circumstances.'"  Cultivos Miramonte S.A. & Flores Mocari S.A. v. United States, 21 CIT 1059, 1064, 980 F. Supp. 1268, 1274 n.6 (1997)(emphasis added)(quoting Davila-Bardales v. INS, 27 F.3d 1, 5 (1st Cir. 1994)).

The CAFC affirmed Commerce's original decision to use the import price of aniline due to the distortions caused by the abnormally high tariff rate of 85 percent.  See Nation Ford III, 166 F.3d at 1377-78.  The reduction in the tariff rate eliminated the original, primary reason for using the import price.  Thus,

---

[8]The articulation of these four reasons for selecting the domestic price of aniline effectively dispels the Plaintiff's claim that Commerce's decision is "arbitrary and capricious." See Pl.'s Mem. Supp. Mot. J. Agency R. at 20.  The arbitrary and capricious standard is extremely deferential. See Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  It requires only that Commerce articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Assoc., 463 U.S. at 43(quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).  The four separate reasons articulated by Commerce meet this threshold.

Commerce's articulated reasons, if supported by substantial evidence, appropriately adapt an existing methodology for determining the surrogate NV of sulfanilic acid to the change in circumstances in the Indian domestic aniline market.

## II. Commerce's Articulated Reasons Are Supported By Substantial Evidence

Section 1677b(c)(1)(B) requires Commerce to calculate factors of production on the basis of the best available information. The statute, however, leaves the phrase "best available information" undefined. See Shandong Huarong Gen. Corp., slip op. 01-88, at 12 (CIT July 23, 2001). For this reason, the Court has recognized that "the process of constructing foreign market value for a producer in a nonmarket economy country is difficult and necessarily imprecise." Nation Ford III, 166 F.3d at 1377 (internal citations omitted). Providing Commerce with only guidelines, Section 1677b(c) grants Commerce substantial discretion in the valuation of the factors of production. See id.

The purpose of the statute necessarily curtails Commerce's otherwise wide discretion. See Coalition, 23 CIT at __, 44 F. Supp. 2d at 258 (citing GMN Georg Muller Nurnberg AG v. United States, 15 CIT 174, 178, 763 F. Supp. 607, 611 (1991)). More specifically, Commerce must "estimate as accurately as possible what the market price of aniline would have been in the PRC 'if such prices were . . . determined by market forces.'" Nation Ford

<u>I</u>, 21 CIT at 1373, 985 F. Supp. at 135 (internal citations omitted); <u>see also</u> <u>Writing Instrument Mfrs. Ass'n, Pencil Section v. United States</u>, 21 CIT 1185, 1191, 984 F. Supp. 629, 637 (1997)("The Court finds that the paramount objective of the statute is to obtain the most accurate determination of dumping margins utilizing the best information available within the broad outlines of the statute."). "Commerce [however] need not prove that its methodology was the only way or even the best way to calculate surrogate values for factors of production as long as it was a reasonable way." <u>Coalition</u>, 23 CIT at __, 44 F. Supp. 2d at 258 (internal citations omitted); <u>see also</u> <u>Shandong Huarong Gen. Corp.</u>, slip op. 01-88, at 12.

Plaintiffs appear to argue that despite the change in circumstances the price of imported aniline remained the best available information for the administrative review at issue, as was the case in past administrative reviews. <u>See</u> Pl.'s Mem. Supp. Mot. J. Agency R. at 23. Plaintiffs challenge the evidentiary support for three of the four factors upon which Commerce relied in making its decision that the domestic price of aniline constituted the best available information.[9] <u>See</u> Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 5. Plaintiffs submit that this decision is not supported by substantial evidence and therefore cannot meet the

_____

[9]Plaintiffs do not challenge Commerce's assertion that information on the record enables the accurate adjustment of the domestic price to account for local and excise taxes. <u>See</u> Pl.'s Mem. Supp. Mot. J. Agency R. at 16-17.

standard of review for sustaining Commerce's determinations.  <u>See</u>

<u>id.</u> at 4-5.

Commerce, however, correctly notes that simply because the

price of imported aniline constituted the best available

information for the preceding reviews does not prove that such

price remains the best available information for the review now at

issue.  <u>See</u> Def.'s Mem. Opp'n Mot. J. Agency R. at 34.  Rather,

what information is the best available information "will

necessarily depend on the circumstances . . . ."  <u>See</u> <u>id.</u> at 17, 34

(citing <u>Nation Ford III</u>, 166 F.3d at 1377).  Commerce maintains,

and we agree, that the record demonstrates that there exist

substantial changes in the Indian aniline market which support

Commerce's decision that the domestic price of aniline constitutes

the best available information.[10]

_____

[10]Commerce, in its briefs, proffers three additional reasons
for rejecting the price of imported aniline.  First, there is
evidence suggesting that the price of aniline imports was a
consequence of dumping.  <u>See</u> Def.'s Mem. Opp'n to Mot. J. Agency
R. at 32.  Second, the record reveals that prices in the world
aniline market are dependent on production facilities.  <u>See</u>
Letter From ECS to Sec. of Commerce, Petitioner's Factual Info.,
C.R. Doc. No. 949 at Momentum Consultants' Report on World
Aniline Prices, Dec. 1998 at 000054("Confidential Info.").
Third, the record contains evidence that most imported aniline is
sold in bulk quantities greatly in excess of the quantity
purchased by Indian sulfanilic acid producers.  <u>See</u> Br. From Law
Firm of Hogan Hartson to Sec. of Commerce, Petitioner's Case Br.,
P.R. Doc. No. 1046 at 28-29, Def.'s Pub. App. at Ex. G (Jan. 14,
2000)("Hogan Hartson")(internal citations omitted).  This
evidence has not been specifically cited by Commerce as a factor
in its decision.  Commerce is "presumed . . . to have considered
all pertinent information sought to be brought to its attention .
. . [and] there is no statutory requirement that [Commerce]
explicitly discuss every piece of record evidence that is put
before it in an investigation."  <u>Allegheny Ludlum Corp</u>, 24 CIT at

### A. The Import Duty Rate Decline for Aniline Effectively Removed Distortions

Throughout previous administrative reviews of sulfanilic acid, Commerce determined that India's Advance License Program protected its domestic aniline industry from global competition by imposing an 85 percent ad valorem tariff rate on aniline imports.  See e.g. Nation Ford III, 166 F.3d at 1375.  This high protective tariff, a classic example of a nonmarket force, see Nation Ford I, 21 CIT at 1374, 985 F. Supp. at 135-36, greatly inflated the cost of domestically produced aniline.  See Nation Ford III, 166 F.3d at 1375.  Heeding Congress' directive to avoid such distortions, Commerce, in the prior reviews, therefore used the price of aniline imported into India to determine the surrogate value in the PRC. See H.R. Conf. Rep. No. 100-576 at 590 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1623.

For the period of review covered by this case, however, India had reduced the rate of duty on aniline imports from 85 percent to 30 percent.  See Decision Memo at 9.  Because all parties agree that during this period of review the import tariff was 30 percent,

___

__, 112 F. Supp. 2d at 1165.  Nonetheless, this Court cannot rely on these reasons for Commerce's decision because they were not relied upon by the agency in its decision.  See U.S. Steel Group v. United States, 24 CIT __, ___, 123 F. Supp. 2d 1365, 1369, (2000); see also Burlington Truck Lines, 371 U.S. 156, 168-69 ("The Courts may not accept . . . counsel's post hoc rationalizations for agency action; [SEC v. Chenery Corp., 332 U.S. 194, 196 (1947),] requires that an agency's discretionary order be upheld, if at all, on the same basis in the order by the agency itself.").

the issue is whether Commerce properly accorded significance to this duty reduction in relying on the domestic price of aniline.[11] Plaintiffs argue that, while notable, the reduction in the tariff rate did not eliminate the pricing distortions in the Indian aniline market.  See Pl.'s Reply Mem. Supp. Agency R. at 5.  The United States, as noted by the Plaintiffs, imposes a tariff rate of only 9.3 percent on imported aniline.  See Pl.'s Mem. Supp. Agency R. at 22 (internal citations omitted).  Invoking a comparison with the Indian import tariff, Plaintiffs declare that 30 percent is still a relatively high tariff rate and therefore Commerce should have continued to use the price of imported aniline in its cost analysis.  See id.

Commerce argues that the reduction in the tariff rate effectively removed the distortions in the domestic price caused by the previously "abnormally high" rate of 85 percent.  See Decision Memo at 9.  Such a reduction is significant in this case because of the role the "abnormally high" tariff rate played in the previous administrative reviews.  This abnormally high tariff rate was previously identified as the primary reason that Commerce chose the

---

[11]Plaintiffs attribute some significance to the fact that India may increase the import tariff sometime in the future.  See Pl.'s Mem. Supp. Mot. J. Agency R. at 22.  The administrative review at hand covers only the period from August 1, 1997 to July 31, 1998.  Consequently, the possibility of an increase in the import tariff is irrelevant.  See Torrington Co. v. United States, 24 CIT __, __, 116 F. Supp. 2d 1206, 1213 (2000); Sanyo Electric Co., Ltd. v. United States, 22 CIT 304, 309-10, 9 F. Supp. 2d 688, 694 (1994).

price of imported aniline as the surrogate value for the PRC product rather than the domestic price. See Nation Ford III, 166 F.3d at 1377-78. The CAFC sustained Commerce's prior selection of the import price primarily because the domestic price was "distorted by the tariff". See id. at 1377-78. Accordingly, "when the tariff rates changed dramatically, the rationale for using the import prices dissipated as well." Def.-Int.'s Mem. Opp'n to Mot. J. Agency R. at 11; see also Decision Memo at 9. Additionally, the current tariff rate of 30 percent "equals the rate applicable to two other inputs for which we have used domestic prices as surrogate values (sulfuric acid and sodium bicarbonate)." Decision Memo at 9.

Furthermore, as Commerce argues, the United States tariff rate should not be used as a point of reference for evaluating surrogate values because the United States and India are not on similar levels of economic development. See Petitioner's Factual Info. at 17; Def.'s Mem. Opp'n to Mot. J. Agency R. at 27; cf. 19 U.S.C. §1677b(c)(4). Aniline prices are country specific, i.e., the price of aniline varies according to the level of production at each country's facilities. See Def.'s Mem. Opp'n to Mot. J. Agency R. at 28 n.6; Confidential Info. at 000054. The United States, at an advanced level of production relative to India, is able to produce aniline at a lower cost, and the import tariff reflects this fact. See Def.'s Mem. Opp'n to Mot. J. Agency R. at 28 n.6; Confidential

Info. at 000054.    Therefore, the United States, able to produce aniline cheaply, does not need to protect its domestic industry with a high import tariff.    Here, the United States is not the surrogate for the PRC; India is.    <u>See</u> Selection of Significant Producer at 1.[12]

Moreover, section 1677b(c)(1)(B) grants Commerce substantial discretion to choose the best information available.    Inherent in this discretion is Commerce's ability, within the confines of section 1677b(c)'s guidelines, to decide that an 85 percent tariff distorts the domestic prices while a 30 percent tariff does not. This type of line-drawing exercise is precisely the type of

---

[12]Plaintiffs further argue that Commerce should have used the import price as "it is the Department's practice, when the data are equal in terms of specificity, contemporaneity, and representativeness, to use an import price over a domestic price because the former is reported on a duty-exclusive, tax exclusive basis, while the latter almost always is not."  Pl.'s Reply Mot. J. Agency R. at 11 (quoting <u>Sulfanilic Acid From the People's Republic of China</u>, 63 Fed. Reg. 63,834, 63,838).  This Court, however, has upheld Commerce's use of domestic prices to determine the surrogate normal value when the domestic price is more indicative of actual value than the import price.    <u>See Kerr-McGee Chem. Corp. v. United States</u>, 21 CIT 1353, 1365, 985 F. Supp. 1166, 1177 (1997); <u>see also Pure Magnesium from the People's Republic of China</u>, 63 Fed. Reg. 3,085, 3,087 (Dep't Commerce Jan. 21, 1998); <u>Certain Cut-To-Length Carbon Steel Plate from the People's Republic of China</u>, 62 Fed. Reg. 61,964, 61,966 (Dep't Commerce Nov. 20, 1997); <u>Brake Drums and Brake Rotors from the People's Republic of China</u>, 62 Fed. Reg. 9,160, 9,163 (Dep't Commerce Feb. 28, 1997). Here, Commerce found, and Plaintiffs do not challenge, that the domestic price can be accurately adjusted for local and excise taxes.  Once adjusted, Commerce determined that the domestic price is the best available information for constructing what the cost of aniline in the PRC would be if it was a market economy. Therefore, the policy behind Commerce's preference, expressed in <u>Sulfanilic Acid From the People's Republic of China</u>, is not relevant in this case.

discretion left within the agency's domain.  There are no set rules for determining best available information; rather, Commerce makes the decision on a case-by-case basis, attempting to obtain the most accurate determination for each specific case.  See Nation Ford III, 116 F.3d at 1377.  Best information available is dependent on the circumstances during the POI.  See id.  Commerce then takes into account any factors that may distort either the import or domestic price thereby not making it useful surrogate data or the best information available.  This Court had previously held that an 85 percent tariff was too high.  See Nation Ford II, 21 CIT 1378, 985 F. Supp. 138.  At some point between 85 percent and no tariff, Commerce has the ability, as long as this decision is supported by substantial evidence, to determine that the tariff rate is no longer distorting the domestic data.  Here, Commerce used this discretion to determine that a 30 percent tariff no longer distorted the domestic price, and this decision is supported by substantial evidence.[13]

---

[13]Plaintiffs further argue that when the weight-averaged Indian domestic price of 40.0641 Rs/kg is discounted by the tariff rate, the result is equal to the import price.  See Pl.'s Reply at 10.  According to Plaintiffs, this demonstrates that the domestic price is distorted by the tariff rate.  See id.  It is more appropriate, however, to look at the import price of 28.04 Rs/kg, see id., and adjust that price by the tariff rate.  The result is 36.452 Rs/kg.  This price is lower than the domestic price, supporting Commerce's decision that the 30 percent tariff does not distort the domestic price.

**B.    India is a Net Exporter of Aniline**

The Decision Memo states "the dramatic growth in aniline exports prior to and during the [period of review] as evidenced by the Monthly Statistics of the Foreign Trade of India (MSFTI), suggests that Indian manufacturers and exporters are no longer reliant on imported aniline to produce sulfanilic acid." Decision Memo at 9. Plaintiffs, asserting that this statement is merely an assumption without any evidentiary support, argue that the continued existence of India's Advance License Program reveals that Indian sulfanilic acid producers still use imported aniline. See Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 12-13. Plaintiffs further speculate that the growth in Indian exports of aniline is the result of dumping. See id. at 13. Finally, Plaintiffs argue that "reasonable Indian manufacturers of sulfanilic acid for export would use only the lower-priced imported aniline to produce for export." Id.

Commerce's determination that there was a significant increase in aniline exports prior to and during the period of review is supported by substantial evidence. Specifically, evidence in the record demonstrates that between 1996 and 1999 Indian aniline production has tripled. See Hogan Hartson at 22-23 (internal citation omitted). During this same period, Indian aniline exports increased ten-fold. See id. at 23. Evidence suggests that at least 59 percent of aniline derivatives exported from India were

made with domestically produced aniline.  See id.; see also Confidential Information at 000041 [



].  While it is true that no evidence was submitted to indicate how much sulfanilic acid was produced with domestically produced aniline, Plaintiffs submitted no evidence to suggest that sulfanilic acid differed from the other aniline derivatives.  Here, although the evidence supports conclusions other than those reached by Commerce, there is also sufficient evidence to support Commerce's determination.  See Consolo, 383 U.S. at 620.


**C.  The Decline in the Domestic Price of Aniline**

While Plaintiffs concede that Indian domestic prices for aniline would fall as the tariff rate applied to such imported merchandise declines, they seemingly are unwilling to accept Commerce's conclusion that domestic prices for aniline have in fact fallen.  See Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 14-15 (referring to the "purported downward trend").  Commerce, however, cites evidence submitted by the Plaintiffs themselves which reveals that domestic prices have demonstrably declined.  See Def.'s Mem. Opp'n to Mot. J. Agency R at 27-28; Aniline Market Prices.  Because the record demonstrates a downward trend in the price of domestic aniline, it is the Plaintiffs' second argument concerning the

decrease in price which warrants examination.

Accepting, arguendo, that the domestic price has fallen considerably, Plaintiffs maintain that the domestic price of aniline continues to be distorted due to the remaining 30 percent import tariff. See Pl.'s Reply Mem. Supp. J. Agency R. at 14. Thus, Plaintiffs charge that Commerce should conclude that the price reduction has resulted in the continued use of imported aniline for export of sulfanilic acid. See id. Plaintiffs assert that from a "pure economics/common sense" perspective Indian producers must continue to use the cheaper, imported aniline. Id. at 15.

Specifically, Plaintiffs make a comparison between the average Indian export price of sulfanilic acid during 1996-1997, which is 46.22 Rs/Kg, and the lowest average per unit Indian domestic aniline price during 1996-1997, which is 48.5 Rs/Kg. See id. at 16 (internal citations omitted). From this comparison, Plaintiffs conclude that the only rational conclusion is that Indian producers of sulfanilic acid use imported aniline given the continued existence of the Advance License Program. See Pl.'s Mem. Supp. Mot. J. Agency R. at 24-25. As Commerce notes, however, the average price of sulfanilic acid exported to the United States from India during the period of review was 72.29 Rs/kg. See Def.'s Mem. Opp'n Mot. J. Agency R. at 29-30; Letter From Law Firm Williams, Mullen, Clark & Dobbins, Respondents' Surrogate Data, P.R. Doc. No.

965 at Table of Exports of Sulfanilic Acid, Pl.'s App. at 4 (July 14, 1999)("Exports of Sulfanilic Acid"). Thus, Commerce rationally concludes that Indian exporters of sulfanilic acid could use domestic aniline and still make a profit. Commerce argues, and we agree, that it may appropriately rely on this comparison because the ultimate question is to construct "what price the PRC would have paid for aniline used to produce sulfanilic acid for export to the United States." Def.'s Mem. Opp'n Mot. J. Agency R. at 30 n.7.

Assuming, arguendo, that some Indian exports of sulfanilic acid may be produced from imported aniline, the Plaintiffs' reliance on this fact is nonetheless misplaced. The "factors of production" methodology does not require Commerce to calculate the surrogate NV on the basis of what Indian producers use. See Nation Ford III, 166 F.3d at 1377. Rather, in selecting surrogate values, Commerce is guided by the purpose of the factors of production methodology, which "is not to construct the cost of manufacturing the subject merchandise in India per se, but to use data from one or more surrogate countries to construct what the cost of production would have been in China were China a market economy country." Tapered Roller Bearings From the People's Republic of China, 62 Fed. Reg. 6,189, 6,193 (Dep't Commerce Feb. 11, 1997)(final results); see also Tianjin Machinery Import & Export Corp. v. United States, 16 CIT at 940, 806 F. Supp. at 1018; Nation Ford III, 166 F.3d at 1375 ("Commerce's task [is] to assess the

'price or costs' of factors of production of sulfanilic acid in India in an attempt to construct a hypothetical market value of that product in China.").

For the case at hand, Commerce attempted to construct the cost of aniline in the PRC as if the PRC were a market economy country. To be affirmed, Commerce "need not prove that its methodology was the only way or even the best way to calculate surrogate values for factors of production as long as it was a reasonable way." Coalition, 23 CIT at __, 44 F. Supp. 2d at 258.  The domestic price of aniline has demonstrably declined. See Def.'s Mem. Opp.'n to Mot. J. Agency R. at 27-28; Aniline Market Prices.  The record also contains evidence which indicates that at least 59 percent of aniline derivatives exported from Indian are produced with domestically produced aniline.  See Hogan Hartson at 23 (internal citations omitted).  This evidence led Commerce to decide that the lower tariff rate enabled domestic aniline to be used in the production of sulfanilic acid for export.  Thus, the Court finds that Commerce's determination is supported by substantial evidence.

**CONCLUSION**

The record clearly reveals numerous changes in the Indian domestic aniline market, notably, that for the entire period of review at issue the import tariff on aniline was reduced from 85 percent to 30 percent. Examining these changes, Commerce concluded that the domestic price of aniline constituted best available information. By articulating a reasonable rationale for departing from prior practice, Commerce acted in accordance with law. Morever, the totality of the changes in the Indian domestic aniline market provide a reasonable basis for Commerce's decision and the premises in Commerce's analysis are supported by substantial evidence. For these reasons, the Court sustains Commerce's decision to use the domestic price of aniline in constructing the surrogate NV. Accordingly, Plaintiffs' Rule 56.2 Motion for Judgement on the Agency Record is denied. Judgment will be entered accordingly.

 

_____
Donald C. Pogue
Judge

Dated:    September 26, 2001
          New York, New York

**United States Court of International Trade**

BAODING YUDE CHEMICAL INDUSTRY
CO., LTD.; BAODING ZHENXING
CHEMICAL CO., LTD.; P.H.T.
INTERNATIONAL, INC.

       Plaintiffs,

       v.

UNITED STATES,

       Defendant,

       and

NATION FORD CHEMICAL CO.,

       Defendant-Intervenor.

Before: Pogue, Judge

Court No.: 00-04-00162

## <u>Judgment</u>

This action has been duly submitted for decision, and this Court, after due deliberation, has rendered a decision herein; now, in conformity with that decision, it is hereby

ORDERED that Plaintiff's motion for judgment on the agency record is denied; and it is further

ORDERED the Department of Commerce's final results for Sulfanilic Acid from the People's Republic of China, 65 Fed. Reg. 13, 366 (Dep't Commerce March 13, 2000) is sustained in its entirety.

 

 

Donald C. Pogue
Judge

Dated:    September 26, 2001
          New York, New York